Opinión disidente emitida por la
Juez Asociada Señora Ro-dríguez Rodríguez,
a la que se unen el Juez Presidente
Señor Hernández Denton, la Jueza Asociada Señora Fiol Matta y el Juez Asociado Señor Estrella Martínez.
La controversia del caso de autos invita a expresarnos sobre el derecho a descubrimiento de prueba en un proce-dimiento de arbitraje obrero-patronal. Particularmente, plantea la interrogante de si un empleado cesanteado tiene derecho a solicitar ver, previo a la vista de arbitraje, la única evidencia utilizada en su contra y sobre la que se fundamentó su despido. Por entender que denegar la peti-ción del empleado lo posiciona en un estado de inadecuada defensa en violación del debido proceso de ley y en desven-taja frente a la parte contraria, disentimos de la Opinión que suscribe una mayoría de este Tribunal. En consecuen-cia, confirmaríamos el dictamen del foro apelativo interme-dio con relación a dejar sin efecto el laudo de arbitraje emitido.
*435 I
Los hechos del caso de autos que motivaron el despido del señor Daniel Pagán Restituyo son los siguientes. Durante agosto del 2007 varias empleadas de la Autoridad de los Puertos (la Autoridad) comenzaron a encontrar en los para-brisas de sus respectivos automóviles notas a manuscrito firmadas con el seudónimo de “Ossira” y “Ossirus”. Las re-feridas notas contenían las frases que transcribimos a con-tinuación: “te he amado en silencio”; “algún día te amaré para ...”; “desde que te vi me he ilusionado contigo”, y “pronto estaremos en el paraíso para amarnos”. Las notas tam-bién fueron dejadas por debajo de la puerta del área de tra-bajo de las empleadas, así como en el baño de damas.
Para atender el asunto, y como no se había podido iden-tificar al autor de las notas, la Autoridad contrató los ser-vicios del perito caligráfico Onofre Jusino. Éste examinó los expedientes de personal de la Autoridad y comparó las grafías de los empleados con aquéllas en las notas. Usando tal metodología, concluyó que el autor de las notas era Daniel Pagán Restituyo.(1) Conforme al Artículo XLIII del convenio colectivo entre la Autoridad y la Hermandad de Empleados de Oficina, Comercio y Ramas Anexas (la Her-mandad),(2) el patrono notificó al señor Pagán Restituyo la citación a una vista administrativa para informarle sobre los cargos en su contra. Durante la vista, la Hermandad solicitó copia del informe pericial de Onofre Jusino, a lo que la Autoridad no accedió. Posterior a la vista, se notificó el despido y la Hermandad solicitó someter el asunto a arbitraje acelerado, según proveía el convenio colectivo.(3)
*436 En la primera vista de arbitraje, celebrada el 31 de enero de 2008, la Hermandad cuestionó al árbitro la utili-zación del perito Jusino como testigo, toda vez que la Au-toridad se había negado a entregar al querellante copia del informe pericial. El árbitro suspendió la vista y la señaló para otra fecha posterior sin antes resolver el asunto pre-sentado por la Hermandad ni ordenar que la Autoridad descubriera la evidencia solicitada. Así las cosas, la vista de arbitraje se celebró el 20 de agosto de 2008. A pesar de las objeciones de la Hermandad, el árbitro autorizó la de-claración del perito Jusino. Igual permitió un breve receso durante la vista para que el querellante y la Hermandad examinaran el informe pericial y pudieran contrainterro-gar al perito.
Por último, el árbitro Jorge Torres Plaza, del Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos de Puerto Rico, emitió el laudo de ar-bitraje el 24 de octubre de 2008 en donde confirmó la ac-ción disciplinaria que tomó la Autoridad(4) Se basó, prin-cipalmente, en que la declaración del perito Jusino “fue contundente y medular al punto de esclarecer quién fue la persona que envió los anónimos a las empleadas”, además que la “Unión tuvo la oportunidad de contrarestar la prueba presentada por la Autoridad y no logró establecer las bases para ello”(5)
*437 Inconforme con la determinación del árbitro, la Hermandad presentó una Petición de Revisión de Laudo de Arbitraje Laboral ante el Tribunal de Primera Instancia. Dicho foro confirmó el laudo de arbitraje. Así, la Herman-dad acudió ante el Tribunal de Apelaciones y adujo que el foro de instancia erró al confirmar el proceder del árbitro que violó su derecho al debido proceso de ley al no permi-tirle examinar el informe pericial previo a la vista de arbitraje.
El Tribunal de Apelaciones revocó la determinación del Tribunal de Primera Instancia tras concluir que al quere-llante se le violó su derecho al debido proceso de ley al no permitir que examinara el informe pericial previo a la vista arbitral. Esto, toda vez que dicho informe fue la única evidencia que apuntaba a la culpabilidad del señor Pagán Restituyo, ya que no hubo ningún testigo que vio al quere-llante dejar las notas a las empleadas.(6) Finalmente, el foro apelativo intermedio sostuvo:
No podemos escapar a la conclusión de que, al no tener la Peticionaria una copia del informe utilizado en su contra, a ésta se le redujo sustancialmente la oportunidad de localizar a algún perito que refutara el mismo, o de refutar de otra ma-nera dicho informe. Si bien podemos plantear que nadie impi-dió a la parte Peticionaria contratar a un perito, esta gestión resultaba fútil, pues, el perito contratado no tendría sobre qué documentos emitir su opinión o preparar un informe, similar al que preparó el perito de la parte Recurrida, para refutar el mismo adecuadamente. Ello obstaculizó que la Peticionaria preparara su caso con prueba pericial, como lo hizo la Recu-rrida, lo que la colocó en una posición de desventaja al mo-mento de contrainterrogar a los testigos y cuestionar la vera-cidad del informe pericial presentado en su contra. A consecuencia de lo anterior, el derecho de la parte Peticionaria de presentar prueba a su favor se vio devastado.(7)
Inconforme con tal determinación, la Autoridad pre-sentó, oportunamente, ante este Tribunal un recurso de *438 certiorari en el que señaló como único error que el foro apelativo intermedio concluyó que el laudo de arbitraje no fue emitido conforme a derecho. Atendida la Petición de certiorari, el 29 de enero de 2010 expedimos el auto solicitado.
II
El caso de autos convida a examinar varios asuntos re-lativos al proceso de arbitraje, específicamente el arbitraje obrero-patronal. Entre éstos, podemos destacar: (1) la na-turaleza del procedimiento de arbitraje vis-á-vis al judicial; (2) el debido proceso de ley de las partes sujetas al proce-dimiento de arbitraje; (3) el proceso de revisión de un laudo de arbitraje, y (4) el derecho a descubrimiento de prueba en el arbitraje. Si bien es cierto que anteriormente hemos atendido distintos aspectos en materia de arbitraje obrero-patronal, la controversia que se nos presenta ahora se in-serta en un contexto muy particularizado. A saber, ¿cómo los tribunales deben atender un reclamo de descubri-miento de prueba hecho ante un árbitro cuando la prueba solicitada es la única utilizada para justificar el despido del empleado?
Adelantamos que esta controversia nos coloca en un lu-gar común presente en todo el ordenamiento jurídico: el lindero entre la norma general y la excepción. Lamenta-mos que la Opinión que emite esta Curia en el caso de autos sea incapaz de reconocer tal distinción tan impor-tante para el desarrollo vigoroso del Derecho.
La fricción entre la norma general y la excepción es muy conocida y la encontramos, tanto en disposiciones constitu-cionales como estatutarias. A modo de ejemplo, la Sección 10 del Artículo II de la Constitución de Puerto Rico dispone como regla general que “[n]o se violará el derecho del pueblo a la protección ... contra registros, incautaciones y alla-namientos irrazonables” (L.P.R.A., Tomo 1, ed. 2008, pág. *439 326), mientras que como excepción preceptúa que sólo se expedirán órdenes de registro e incautaciones por mandato judicial; el Código Penal de Puerto Rico de 2004 establece una serie de excepciones englobadas bajo “causas de exclu-sión de responsabilidad penal” (Arts. 25-34, 33 L.P.R.A. secs. 4653-4662), y “causas de inimputabilidad” (Arts. 38-41, 33 L.P.R.A. secs. 4666-4669); el Código Civil de Puerto Rico hace lo propio, por ejemplo, en el Artículo 133, 31 L.P.R.A. sec. 534, sobre la adopción conjunta e individual); las Reglas de Evidencia de Puerto Rico establecen que no será admisible prueba de carácter del imputado, salvo que se satisfagan las excepciones de la propia Regla 404(a), 32 L.P.R.A. Ap. VI.
No debemos olvidar que una excepción no anula la regla general, sino que es un estado de aplicación particulari-zada que impide incurrir en la llamada falacia del “secun-dum quid” o falacia de accidente o falacia del mal uso de una generalización. Esta falacia consiste “en olvidar que una regla general puede no ser aplicable en situaciones atípicas o excepcionales”. R. García Damborenea, “Falacia del Secundum Quid o falacia por mala aplicación de una regla o falacia del mal uso de una generalización”, en Dic-cionario de falacias, http://perso.wanadoo.es/usoderazon web/html/conten/arca/listado/secu.htm#_ftnl (última vi-sita 28 de febrero de 2012). La aplicación de la excepción no mina la verosimilitud de la norma general, por eso se favorece su aplicación en aquellas instancias en que la ri-gidez de la norma general constituya un error lógico. Como sostienen Irving M. Copi y Carl Cohen:
[A] un cuando los enunciados generales sean del todo verosí-miles, debemos tener cuidado de no aplicarlos en una forma demasiado rígida a casos particulares. Las circunstancias al-teran los casos, una generalización que es verdadera puede no aplicarse a un caso dado, por buenas razones que tienen que ver con las circunstancias especiales o accidentales del caso.
*440 En derecho, los principios que son válidos en general, en ocasiones tienen excepciones identificables como tales. I.M. Copi y C. Cohen, Introducción a la lógica, México, Ed. Limusa, 2003, pág. 135.
Debemos ser conscientes de la distinción entre norma general y excepción al momento de examinar el marco jurí-dico concerniente y su posterior aplicación al caso de autos. Ignorar esa distinción, como hace una mayoría de este Tribunal, crea el riesgo de que toda controversia quede sub-sumida dentro de una generalización inaplicable. Eso, evi-dentemente, incide sobre nuestra función de impartir justicia al minimizar nuestro quehacer profesional a la aplicación automática de una norma general, sin ser capa-ces de distinguir la aplicabilidad de una excepción. A con-tinuación, examinaremos la controversia de autos teniendo presente la discusión anterior.
A
El arbitraje es un procedimiento producto de una rela-ción contractual, Luce & Co. v. Junta Rel. Trabajo, 86 D.P.R. 425, 440 (1962), y se estima como un proceso alterno al litigio judicial, por lo que goza de características parti-culares ajenas a la adjudicación formal. Entre las caracte-rísticas principales del arbitraje se destacan: (1) repre-senta un juicio de tipo contencioso y adjudicativo en la medida en que las partes presentan prueba al árbitro para que resuelva la controversia ante su consideración, y (2) la informalidad y flexibilidad del procedimiento, puesto que no aplican las reglas formales de evidencia ni de procedi-miento civil, contrario al proceso judicial. D. Fernández Quiñones, El arbitraje obrero-patronal, Colombia, Ed. Forum, 2000, págs. 23-24.
En Puerto Rico existe una vigorosa política pública a favor del arbitraje obrero-patronal. C.F.S.E. v. Unión de Médicos, 170 D.P.R. 443, 448 (2007). Se entiende que el arbitraje es el medio menos técnico, más flexible, menos *441 oneroso y, por lo tanto, más apropiado para resolver las controversias que emanan de la relación laboral. Depto. Educ. v. Díaz Maldonado, 183 D.P.R. 315 (2011). Por ello, hemos expresado que “cuando se acuerda el uso del arbi-traje como mecanismo para ajustar las controversias, se crea un foro sustituto a los tribunales de justicia, cuya in-terpretación merece gran deferencia”. C.F.S.E. v. Unión de Médicos, supra, pág. 449. (8)
La deferencia que los tribunales han expresado hacia los procesos arbitrales se centra en el elemento discrecio-nal que pulula en estos procedimientos. Véanse, e.g.: Paperworkers v. Misco, Inc., 484 U.S. 29 (1987) (se recono-ció a los árbitros amplia discreción en materia de derecho probatorio, por lo que los tribunales no podrán anular lau-dos de arbitraje por errores en la aplicación de normas del derecho probatorio, salvo que dichos errores se hayan co-metido por mala fe o que fueran tan crasos que equivalgan a conducta impropia del árbitro); Fernández Quiñones, op. cit, pág. 253 (debido a la flexibilidad del proceso, los árbi-tros gozan de amplia discreción en materia de admisibili-dad de evidencia).
Discreción es poder para decidir en una u otra forma, para escoger entre uno o varios cursos de acción. Pueblo v. Ortega Santiago, 125 D.P.R. 203, 211 (1990). No obstante, hemos indicado que
. . . la discreción se nutre “de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia; no es función al antojo o voluntad de uno, sin tasa ni limita-ción alguna”. ... Asimismo, “no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho”. (Énfasis suplido). HIETel v. PRTC, 182 D.P.R. 451, 459 (2011), *442 citando a Santa Aponte v. Srio. del Senado, 105 D.P.R. 750, 770 (1977); Bco. Popular de P.R. v. Mun. de Aguadilla, 144 D.P.R. 651, 658 (1997).
Por ello es importante hacer hincapié en que la discre-ción debe estar enmarcada dentro de los límites de nuestro sistema de derecho. Es cierto que como norma general el arbitraje tiene una marcada ventaja con relación a los pro-cesos judiciales, pues se utilizan pocas reglas o normas procesales que limitan el ejercicio de discreción de los ár-bitros en el manejo de la controversia. Fernández Quiñones, op. cit., pág. 22. Ahora bien, ello no implica que los árbitros gocen absolutamente de una licencia abierta para actuar contrario a los postulados jurídicos que sustentan las nociones básicas de justicia y equidad. Por consi-guiente, a pesar de haber una marcada diferencia entre el proceso judicial y el arbitral en términos estructurales y evidenciarios, no debemos soslayar un denominador común dentro del sistema de derecho que limita a ambos procedi-mientos; el debido proceso de ley. Examinemos a continua-ción ese denominador común.
B
Al igual que en un procedimiento judicial, en el arbitral se deben reunir los requisitos de justicia, equidad e imparcialidad. Por tal motivo, los árbitros se hallan total-mente sujetos a conducir los procedimientos bajo las ga-rantías del debido proceso de ley. Fernández Quiñones, op. cit., pág. 213.
La Constitución de Puerto Rico dispone en su Artículo II, Sección 7, que “[n]inguna persona será privada de su liber-tad o propiedad o libertad sin debido proceso de ley ...”.(9) *443 La garantía del debido proceso de ley opera en dos dimen-siones distintas: la procesal y la sustantiva. La vertiente sustantiva del debido proceso de ley persigue proteger y salvaguardar los derechos fundamentales de la persona, mientras que la procesal impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y de propiedad del individuo se haga a través de un proce-dimiento que sea justo y equitativo. U. Ind. Emp. A.E.P. v. A.E.P., 146 D.P.R. 611, 615-616 (1998).
El derecho a un debido proceso de ley en su vertiente procesal goza de ser uno de los pilares de nuestro ordena-miento jurídico, exigido tanto en los procedimientos judi-ciales como en los legislativos, administrativos y arbitrales. Véanse, e.g.: Santa Aponte v. Srio. del Senado, 105 D.P.R. 750, 764 (1977); Nogueras v. Rexach Benitez I, 141 D.P.R. 470 (1996) (Sentencia) (debido proceso de ley en procedimientos legislativos); Torres Solano v. P.R.T.C., 127 D.P.R. 499 (1990) (debido proceso de ley en procedimientos administrativos); HIETel v. PRTC, supra, pág. 460 (“en los procesos de arbitraje no se puede violar la vertiente proce-sal del debido proceso de ley”, énfasis suplido).
En lo que respecta a los procesos de arbitraje, se ha mencionado que “[l]a naturaleza adjudicativa del arbitraje requiere que se tengan presentes unas reglas fundamenta-les del derecho probatorio para así garantizar un mínimo de debido proceso. Quizás de mayor relieve es la finalidad de que el juego limpio, la racionalidad y el sentido de jus-ticia imperen e informen el procedimiento”. Fernández Quiñones, op. cit., pág. 253. En cuanto a estas exigencias dentro del foro arbitral, el Prof. Demetrio Fernández in-dica:
La presencia del debido proceso de ley en el procedimiento de arbitraje es crucial para su validez. Se trata de una función adjudicativa que está permeada de un interés público aun cuando acontezca dentro de un ámbito en que sus protagonis-tas son entes y personas particulares y privadas. ... Es insos- *444 layable que, en la adjudicación que se efectúa, pueden estar implicados derechos de rango constitucional y de carácter estatutario. Ello de suyo reclama la presencia ineludible de irnos requisitos procesales que garanticen el respeto y cumpli-miento de esos derechos.
Reconocido el derecho de que se le confiera a las partes al-gún debido proceso de ley, la pregunta de rigor es qué tipo o clase de debido proceso se debe conferir. ...
Las normas que nutren el debido proceso de ley en materia de arbitraje son, a saber:
(i) Notificación y consentimiento de los cargos,
(ii) Vista, y
(iii) Oportunidad de someter evidencia.
Además de ser justo y razonable el procedimiento. Esto úl-timo presupone que se cumplan otros requisitos que forman parte de lo que es el debido proceso de ley. Ello es todo aquello que repugna por ser arbitrario e injusto, que no brindó a una parte la oportunidad a confrontarse con los reclamos de la otra parte, que no hubo una adjudicación imparcial y que se negó el derecho a contrainterrogar. (Énfasis suplido y escolio omitido). Fernández Quiñones, op. cit., pág. 544.
Sobre los elementos que deben componer el requisito de debido proceso de ley en la esfera arbitral, continúa expo-niendo el profesor Demetrio Fernández:
Es indiscutible que es injusto imponer un castigo sin darle a conocer al empleado las razones. También lo es retener infor-mación y detalles relacionados con los cargos hasta que el agravio se procese, ya que se le priva al quejoso de evidencia que tenía que estar disponible al momento en que se determinó procesar el agravio. (Énfasis suplido). íd., pág. 214, citando a General Electric Co., 74 LA 125 (Clark 1979).
En Puerto Rico se reconoce el derecho y la protección a un debido proceso de ley en toda actuación en la que el Estado intervenga con un ciudadano particular. Marrero Caratini v. Rodríguez Rodríguez, 138 D.P.R. 215, 219 (1995). Ergo, en las circunstancias de un procedimiento de arbitraje donde es ineludible una adjudicación justa e im-parcial y el Estado participe como ente adjudicador, vemos la importancia de garantizar un debido proceso de ley *445 cuando el agraviado sea un empleado público, como en el caso de autos, así como en aquellas en que no lo sea.(10) La exigencia del debido proceso de ley en medio de un proceso adjudicativo controlado por el Estado se inserta en la mé-dula del procedimiento en sí, independientemente de los participantes. Esto, por razón de que el valor jurídico a proteger es el derecho de una persona a la transparencia del proceso y el concepto de justicia inherente a sí. “Prívate though an arbitration tribunal may be, the parties who appear before it have the right to expect that its procedures and processes will conform to fundamental standards of fairness which would be required in the case of governments”. R.W. Fleming, The Labor Arbitration Process, University of Illinois, 1965, págs. 165-166.
C
En todo proceso adjudicativo, sea de naturaleza judicial, administrativa o de cualquier índole, debe prevalecer el propósito de hallar la verdad y hacer justicia a las partes. J.R.T. v. Aut. de Comunicaciones, 110 D.P.R. 879, 884 (1981). Basado en esa premisa teleológica de justicia y ver-dad, hemos señalado que el incumplimiento con el debido proceso de ley durante la vista es una de las causas de nulidad de un laudo de arbitraje. íd., pág. 885. Además, hemos señalado que “[s]i bien la decisión sobre una cues-tión de admisión de pruebas no está entre las más frecuen-tes causas para dejar sin efecto un laudo, si tal decisión tiene el alcance de impedir que se conozca la verdad y se haga justicia, equivale a una violación del debido procedi-miento de ley”. (Énfasis suplido). íd., págs. 885-886.
Este Tribunal ha adoptado la norma de autolimitación judicial de no interferir con los laudos de arbitraje, salvo *446 que las partes hayan pactado que el laudo de arbitraje sea emitido conforme a derecho, en cuyo caso los tribunales podrán corregir errores jurídicos en atención al derecho aplicable.(11) En tal supuesto, la revisión judicial de los lau dos de arbitraje es análoga a la revisión judicial de las decisiones administrativas. C.F.S.E. v. Unión de Médicos, supra, pág. 449. A pesar de tal norma de autolimitación, esta Curia ha manifestado que en las ocasiones en que no se pacte que el laudo se emita conforme a derecho, los tribunales podrán atender una impugnación del laudo ba-sada en: (1) fraude, (2) conducta impropia, (3) falta del de-bido proceso de ley en la celebración de la vista, (4) violación de la política pública, (5) falta de jurisdicción, y (6) que el laudo no resuelva todas las cuestiones en contro-versia que se sometieron. C.O.P.R. v. S.P.U., 181 D.P.R. 299 (2011); Junta Relaciones del Trabajo v. N.Y. & P.R. S/S. Co., 69 D.P.R. 782, 800 (1949).(12)
Como se puede observar, estas causales de nulidad de un laudo constituyen excepciones a la norma general de abstención que los tribunales se han impuesto en el pa-sado:
Un laudo de arbitraje ocupa una posición muy similar a la de una sentencia o decreto judicial. Como regla general puede ser impugnado o anulado si existe algún defecto o insuficien-cia en la sumisión o en el laudo mismo que lo invalide, o cuando el procedimiento seguido se ha desviado de manera substancial y peijudicial de las reglas que gobiernan los pro-cedimientos por y ante árbitros. Los tribunales no se inclinan fácilmente a decretar la nulidad de un laudo de arbitraje, y no deben permitir que los mismos sean impugnados a menos que *447 contra ellos pueda levantarse una de las objeciones antes men-cionadas o que se alegue y pruebe fraude o mala conducta o la comisión de un grave y perjudicial error que equivalga a una violación del derecho a un debido procedimiento de ley. (Escolio omitido). Ríos v. Puerto Rico Cement Corp., 66 D.P.R. 470, 477-478 (1946).
Conforme a lo antes descrito, independientemente de si se pactó que el laudo de arbitraje se emita conforme a de-recho o no, podremos intervenir con éste si ha ocurrido alguna violación del debido proceso de ley durante el pro-cedimiento de arbitraje. No obstante, previo a dicha inter-vención, debemos realizar un examen para determinar cuál es el procedimiento exigido (what process is due), el que dependerá de las circunstancias presentadas. Almonte et al. v. Brito, 156 D.P.R. 475, 481 (2002); Rivera Rodríguez & Co. v. Lee Stowell, etc., 133 D.P.R. 881, 887-888 (1993). Para ello, veamos a continuación cuál es la norma relacio-nada al descubrimiento de prueba en los procedimientos de arbitraje.
D
Al examinar cuál es la normativa referente al descubri-miento de prueba en la esfera arbitral, debemos retomar y tener presente la distinción entre la norma general y la excepción, puesto que la aplicación automática e indiscri-minada de la norma general podría conducir a lo que algu-nos han denominado un absurdo jurídico o injusticia. Véase J. Vallet de Goytisolo, Panorama del Derecho Civil, 2da ed., Barcelona, Ed. Bosch, 1973, págs. 85-87. Como mencionamos anteriormente, excluir la excepción en cir-cunstancias donde la norma general no aplica resulta en un error de lógica judicial. En la controversia presente, donde coexisten dos normas jurídicas aceptadas, debemos ponderarlas según las circunstancias del caso para luego ejercer con la mayor sensatez nuestra función adjudi-cadora.
*448 Como norma general, el procedimiento de arbitraje se ca-racteriza por su flexibilidad, rapidez e informalidad, por eso el debido proceso de ley que se exige no puede contener la rigidez que particulariza una vista judicial. Por esta razón es que no aplican estrictamente las reglas de evidencia. Fernández Quiñones, op. cit., pág. 545. Asimismo, reciente-mente esta Curia sostuvo que las reglas de procedimiento civil pueden servir de guías, siempre que no contradigan lo pactado en el convenio ni frustren la flexibilidad y agilidad que son inherentes al proceso de arbitraje. HIETel v. PRTC, supra. La creencia generalizada es que los procedimientos de arbitraje se efectúen de manera rápida, cómoda, menos costosa y técnica. J.R.T. v. Hato Rey Psychiatric Hosp., 119 D.P.R. 62, 68 (1987). Por eso es que, generalmente, “[u]nless directed by the contract, strict observance of legal rules of evidence is not necessary in arbitration”. (Enfasis suplido). F. Elkouri, How Arbitration Works, 6ta ed., Washington, D.C., BNA Books, 2003, pág. 341.
El principio general de no permitir el descubrimiento de prueba y de no convertir el proceso de arbitraje en un pro-cedimiento judicial, no alberga inherentemente un ele-mento inexpugnable que entronice su cualidad absoluta. En otras palabras, no podemos convertir el arbitraje en un procedimiento hierático ajeno a todo descubrimiento de prueba. Como bien señalamos, lo que no permite el proce-dimiento de arbitraje es la aplicación estricta de las reglas procesales o de evidencia. Llegar a la conclusión de excluir todo tipo de descubrimiento convertiría al procedimiento de arbitraje en arbitrario. Aunque la discreción del árbitro es una característica intrínseca del proceso en sí, tal dis-creción no puede estar basada en el vacío jurídico, sino dentro de los límites del derecho. Negrón v. Srio. de Justicia, 154 D.P.R. 79, 91 (2001).
La pregunta que se suscita con relación a esta contro-versia evidenciaría en el ámbito arbitral es dónde radica el límite entre lo permitido y no permitido en aras de no ra- *449 yar en una violación al debido proceso de ley de las partes. Según lo esbozado, permitir todo tipo de descubrimiento es incongruente con el proceso en sí, mientras que la elimina-ción completa del descubrimiento de prueba constituiría una violación al debido proceso de ley exigido. La res-puesta, pues, no se alberga en una solución equidistante a ambos extremos (en el centro), sino que en ánimo de pre-servar la naturaleza flexible e informal del proceso debe-mos auscultar en un área limítrofe entre la violación y la no violación del debido proceso de ley. Ahí estriba la excep-ción a la norma general en cuanto a la controversia de autos.
Sobre materia evidenciaría en adjudicaciones arbitra-les, se ha mencionado que:
En la medida en que se proporcione a las partes la oportuni-dad de prepararse para hacer frente a lo que es objeto de con-troversia, de estar presente en las vistas que se celebran, de escuchar los testimonios en su contra y de contrainterrogar a los testigos contrarios y de que el laudo se funde en la eviden-cia que ha desfilado ante el árbitro!,] se ha respetado el debido procedimiento de ley. (Énfasis suplido). Fernández Quiñones, op. cit., págs. 545-546.
Por otra parte, Alberto Acevedo Colom añade:
Las Reglas de Procedimiento Civil y Evidencia no son de apli-cación en las vistas de arbitraje, con la excepción de aquellos casos en que las partes expresamente dispongan lo contrario.
... En el arbitraje!,] los árbitros disfrutan de un amplio nivel de discreción para regular el descubrimiento de prueba. Esto permite una mayor flexibilidad y agilidad en los procesos, lo que redunda en menos gastos para las partes y en una solu-ción más rápida de la controversia, sin que eso resulte en per-juicio de la justicia.
El hecho de que las Reglas de Procedimiento Civil y Eviden-cia no resulten aplicables a las vistas de arbitraje, no conlleva que el árbitro disfruta de discreción ilimitada para conducir las mismas a su discreción. Es indispensable que a todas las partes que intervienen en un proceso de arbitraje se les garan-tice un debido proceso de ley. Esto conlleva lo siguiente:
a. El derecho de cada parte a conocer las alegaciones en su *450 contra con razonable anticipación al proceso de vista.
b. El derecho a una vista.
c. El derecho de cada parte de presentar prueba a su favor.
d. El derecho de interrogar o controvertir la prueba con-traria.
e. Que la persona o personas que presidan la audiencia y adjudiquen la controversia sean imparciales. (Enfasis suplido). A. Acevedo Colom, Legislación de relaciones del trabajo comentada, San Juan, [s. ed.], 2007, pág. 228.
Si las partes acordaron en el convenio colectivo que en el proceso de arbitraje aplicarán las reglas de procedimiento civil o las reglas de evidencia, entonces el árbitro deberá ceñirse a lo pactado, permitiendo un descubrimiento de evidencia completo. Fairweather’s Practice and Procedure in Labor Arbitration, (R.J. Schoonhoven, ed.), 4ta ed., Washington, D.C., BNA Books, 1999, Cap. 6, pág. 181. Ahora bien, el no pactarlo no excluye totalmente dicha nor-mativa jurídica:
In arbitration, formal prehearing discovery procedures are very limited. Labor arbitrators are sensitive to the need for cautious discovery in the collective bargaining relationship because of the potentially adverse effect that broad discovery rules could have where parties deal with each other on a daily basis. ...
This is not to say, however, that discovery is either unknown or unworkable in arbitration; quite the contrary. A free flow of information between the parties is needed to enable them to better evaluate their respective positions^ and perhaps avoid arbitration altogether. (Énfasis suplido). Id., págs. 173-174.(13)
*451 Como vemos, el problema surge cuando no se pacta en el convenio colectivo la utilización de las normas eviden-ciarías. En ese caso la doctrina estima que se deberá aten-der cada caso dentro de las circunstancias y el contexto que le rodeen, mas no mediante una aplicación automática de la norma general, tal cual realiza la Opinión de este Tribunal. Así apunta el Prof. Demetrio Fernández:
Muchos contratos colectivos requieren de las partes que re-velen toda información pertinente durante el procedimiento de quejas o agravios. Si el contrato tiene esa disposición, una parte no podrá presentar evidencia por primera vez en la audiencia. Si el contrato colectivo carece de una disposición que requiera que se haga un descubrimiento total de la evi-dencia, se suscita la cuestión de si una parte puede presentar prueba que no fue discutida durante el procedimiento de que-jas y agravios. A ese interrogante que se desdobla en otras que van a la médula de la salud del sistema —a la protección de los derechos procesales de la otra parte, al papel que desem-peña el árbitro y al entendimiento que tiene del proceso— se contestó señalando que no existe una sola respuesta. Es deber del árbitro examinar a fondo las circunstancias del caso, la naturaleza de la relación y la relación de las partes entre sí para precisar la respuesta a esa interrogante. Fernández Quiñones, op. cit., pág. 267, citando a R.W. Fleming, The Labor Arbitration Process 145 (1967).
Así, al evaluar las circunstancias de cada caso, se de-berá ponderar la necesidad que tenga la parte afectada para que dicha prueba se descubra. Según reconoce Elkouri al evaluar este asunto según disposiciones federa-les:
Certain federal agencies have a duty under the Federal Service Labor-Management Relations statute (FSLMR), similar to those imposed on private employers under the Labor Management Relations Act (LMRA), to provide union representatives with data that are reasonably available and necessary for the union to carry out its representational functions and responsibilities in connection with an employee grievance. Courts have interpreted the statute to require a union to show a “particularized need” for the data before the employer must *452 produce them. The statute has also been interpreted to require the production of documents prior to an arbitration hearing, and to compel agency officials to testify at a hearing. (Énfasis suplido y escolios omitidos). Elkouri, op. cit., Supl. 2010, Cap. 8, pág. 158.
Esto es cónsono con el proceder de otras jurisdicciones, donde los tribunales han reconocido que aunque no se fa-vorece el descubrimiento de prueba en los procesos de ar-bitraje, en circunstancias excepcionales se debe abrir paso a cierto descubrimiento cuando se demuestre su necesidad. Fairweather’s, op. cit, pág. 185 (“more recent court decisions evidence greater willingness to allow formal discovery during arbitration where exceptional circumstances exist”).
La American Arbitration Association ha elaborado unas normas para solucionar las disputas obreras, las que arro-jan luz a controversias como la presente(14) Estas normas se encuentran recogidas en el National Rules for the Resolution of Employment Disputes, cuya Regla 7 dispone de un examen (test) útil para las circunstancias como la del caso de autos. El examen que provee la Regla 7 establece que el árbitro tendrá la autoridad de permitir el descubrimiento de prueba en la medida en que lo considere “necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration”. American Arbitration Association, National Rules for the Resolution of Employment Disputes, Regia 7, http://www.adr.org/ sp.asp?id=22075#natrules (última visita 5 de marzo de 2012).
Al utilizar este examen, el árbitro Alfred Feliu sugiere que se tengan en cuenta cuatro interrogantes: (1) ¿Es probable que con la información que se quiere obtener se con- *453 tribuya a descubrir evidencia pertinente?; (2) ¿Permitir la solicitud del descubrimiento evitará elementos sorpresas en la vista?; (3) ¿Permitir el descubrimiento solicitado ayu-dará a agilizar el procedimiento de arbitraje?, y (4) ¿La información que se procura es necesaria para garantizar a las partes un debido proceso ley y una vista justa? A.G. Feliu, Discovery in Arbitration: How Much is Enough?, 4 (Núm. 1) ADR Currents 1, 2 (marzo 1999). En fin, el espec-tro de descubrimiento de prueba necesario es aquel que permita alcanzar una solución eficiente y costo-efectiva, pero sin menoscabar los principios de justicia y equidad, íd., pág. 3.
Al atemperar una reclamación de descubrimiento de prueba según las interrogantes expuestas, no se deberá considerar paradójico que cualquier reclamo de descubri-miento hará infructuoso el objetivo de agilizar el procedimiento. Todo lo contrario, una evidencia reclamada que sea pertinente y evite los elementos sorpresas permi-tirá a la unión o al representante del quejoso decidir de antemano si desea invertir tiempo y otros recursos econó-micos en el proceso de arbitraje. Fairweather’s, op. cit., pág. 176. (15) En una circunstancia excepcional donde se amerite descubrir dicha evidencia porque se ha demos-trado su necesidad, no permitirlo expondría al reclamante a una posición de desventaja al privarle de una defensa adecuada. Por ello, entiende Elkouri que en circunstancias como la descrita, “ [arbitrators may overturn a party’s attempt to limit disclosure of information prior to a hearing *454 if the limitations imposed are found to be unreasonable”. Elkouri, op. cit, Supl. 2010, pág. 158.
Con relación a esto, en EcoLab Inc., 120 LA 641, 644 (Allen, Jr., 2004), el árbitro dispuso unas guías para las circunstancias en que, previo a la vista de arbitraje, una de las partes solicitara una evidencia que esté en posesión de la parte contraria:
Generally speaking, if documents can legitimately be submitted into the record during the arbitration hearing where Union officials are present, then there is no reason not to supply that same information to Union officials prior to the hearing in order to expedite the proceedings and to provide the Union a “fair and reasonable” opportunity to properly prepare its case. Of course, the Union would have an obligation to exercise discretion in the use of any such documents and information-that it be used only for the purpose of preparing a case. (Énfasis suplido). (Citado en Elkouri, op. cit., Supl. 2010, pág. 158).
En resumen, enfatizamos que la norma general es que no hay derecho a descubrimiento de prueba en un procedi-miento de arbitraje en que las partes no pactaron utilizar las reglas evidenciarías ni de procedimiento civil. No obs-tante, y a modo de excepción, este Tribunal debería adoptar la norma de que cuando se presenten circunstancias ex-traordinarias se podrá descubrir sólo aquella evidencia que sea necesaria, sujeto a que la parte afectada por esa evi-dencia demuestre previamente las bases de su necesidad. Con ese proceder se salvaguarda el carácter flexible e informal del procedimiento de arbitraje sin menoscabar los principios fundamentales de justicia, equidad e imparciali-dad que exige el debido proceso de ley.
Veamos a continuación la controversia presente a según la elaboración del derecho que acabamos de realizar.
*455 III
Según mencionamos anteriormente, y recapitulamos, el señor Pagán Restituyo fue cesanteado porque alegada-mente dejó unas notas que constituían conducta impropia que atentaba contra la seguridad de sus compañeras de trabajo. Conforme al convenio colectivo entre la Herman-dad y la Autoridad, ésta celebró una vista administrativa como parte del procedimiento de quejas y agravios. Tras la notificación del despido y la insatisfacción del quejoso, la Hermandad solicitó someter el asunto ante la adjudicación de un árbitro, la que sería conforme a derecho, puesto que el convenio disponía para ello. La única prueba que utilizó la Autoridad para justificar la acción disciplinaria contra el quejoso fue un informe pericial, el mismo que tomó en consideración el árbitro durante el procedimiento de arbitraje. Ante ello, debemos evaluar si al amparo de estas circunstancias la Hermandad podía exigir el descubri-miento del informe pericial previo a la vista de arbitraje.
Como esbozáramos en la parte expositiva, ante un re-clamo de descubrimiento de prueba en el foro arbitral se deberían ponderar los siguientes tres elementos: (1) la pre-sencia de circunstancias excepcionales, (2) la necesidad de la parte que solicita el descubrimiento y (3) la no violación del derecho a un debido proceso de ley, todo ello enmarcado dentro de las exigencias ontológicas del procedimiento de arbitraje: flexibilidad, rapidez y costo-eficiencia.
Previo a entrar a evaluar esta controversia al amparo del examen anterior, hay que analizar dos asuntos preliminares. El primero es determinar la capacidad de los tribunales de revisar el laudo de arbitraje emitido. Mencio-namos que el laudo de arbitraje en la controversia ante nosotros se debía emitir conforme a derecho, por lo que un tribunal estaría en posición de revisar el laudo con relación al derecho sustantivo laboral aplicable. C.F.S.E. v. Unión *456 de Médicos, supra, págs. 449-450. No obstante, en la con-troversia de autos no está en disputa un derecho sustan-tivo laboral (como por ejemplo, la indemnización corres-pondiente tras un despido injustificado), sino el derecho a gozar de una adjudicación justa e imparcial mediante los procedimientos de descubrimiento de prueba. En ese sen-tido, no podemos caer en la conclusión simplona de que la revisión se da meramente por ser un laudo que debía emi-tirse conforme a derecho, sino que ésta se da principal-mente a causa de la violación del debido proceso de ley exigido. Esto tiene como consecuencia que dicha violación hubiese facultado la revisión judicial tanto para aquellos laudos que sean emitidos conforme a derecho, como aque-llos en que no.
El segundo asunto a dilucidar previo a aplicar el exa-men anterior es si el convenio colectivo contiene alguna disposición que obligue a las partes a aplicar las reglas procesales o evidenciarías pertinentes. Después de todo, el convenio colectivo es de naturaleza contractual y lo pac-tado constituye ley entre las partes mientras no contra-venga la ley, la moral ni el orden público. Luce & Co. v. Junta Rel. Trabajo, supra, pág. 440; Arts. 1044 y 1207 del Código Civil de Puerto Rico, 31 L.P.R.A. secs. 2994 y 3372. Al examinar el expediente ante nuestra consideración, no-tamos que no se deduce del convenio colectivo el derecho a un descubrimiento de prueba durante el proceso de sus-pensión de un empleado ni la aplicación de las reglas de derecho probatorio o de procedimiento civil. La Sección 2 del Artículo XLIII de dicho convenio sólo dispone que la reunión o vista administrativa previa al arbitraje tendrá el propósito, además de informar los cargos, de que “el em-pleado informe de algún hecho, testigo, versión diferente, que pueda hacer variar sustancialmente los cargos imputados.” Más allá de esto, no hay más disposiciones contractuales referentes al descubrimiento de prueba. Sin embargo, eso no es óbice para permitir algún descubrí- *457 miento de prueba según lo requieran las circunstancias del caso. Véase Fairweather’s, op. cit., págs. 173-174.
Superados estos dos asuntos preliminares, debemos evaluar, entonces, si hay circunstancias excepcionales en la controversia de autos que hagan necesario un descubri-miento de prueba, con tal de garantizar a las partes una adecuada defensa y una adjudicación justa y equitativa. Sólo así se evitará crear desventaja de una parte sobre la otra en la preparación del procedimiento de arbitraje.
En la vista de arbitraje declararon el perito Jusino, Roberto Ramos Cruz (oficial de Seguridad Interna), José M. Rivera Medina (director de Auditoría y Controles Adminis-trativos) y una de las empleadas afectadas por las notas que dieron paso a la controversia de autos. (16) Además, se presentaron documentos como exhibit, los que contenían información como: la carta de despido enviada por la Auto-ridad, el convenio colectivo, el formulario de querella pre-sentado ante la Oficina de Auditoría de la Autoridad, entre otros. A pesar de ello, los documentos presentados como exhibit, las declaraciones del oficial de seguridad, del director de Auditoría y de la empleada no fueron la evidencia que demostró la responsabilidad del señor Pagan Resti-tuyo, ya que dichos testimonios y documentos sólo apunta-ron a que, en efecto, ciertas empleadas recibieron unas no-tas que provocaron un ambiente inseguro y hostil en el empleo, y a que la Autoridad implemento un plan de vigi-lancia en el estacionamiento tras las quejas de las empleadas.(17) La evidencia que condujo al árbitro a con- *458 cluir que el despido del quejoso fue justificado fue sólo una: el informe pericial de Onofre Jusino y su correspondiente declaración en la vista de arbitraje. Así lo estimó el propio árbitro en el laudo de arbitraje: “El testimonio vertido por el señor Jusino, fue contundente y medular al punto de esclarecer quién fue la persona que envió los anónimos a las empleadas aquí afectadas”.(18)
Ante la ausencia de otra prueba que demostrara que en efecto el señor Pagán Restituyo fue el autor de las notas en controversia, es forzoso concluir que en el caso de autos se justificaba la necesidad de solicitar la producción del in-forme pericial previo a la vista de arbitraje. Según señala-mos, la petición de acceso a información previo a un proce-dimiento de arbitraje no obliga automáticamente a la otra parte a acceder a ello, sino que hay que atenderlo según las circunstancias particulares del caso. Véase Detriot Edison v. NLRB, 440 U.S. 301, 314 (1979). Examinados los hechos que rodean la controversia presente, entendemos que se satisfacen las circunstancias extraordinarias o excepciona-les que justificarían la producción de la evidencia solicitada. Como vemos, el requisito de necesidad está es-trechamente ligado al de circunstancias extraordinarias y en el caso de autos se satisfacen ambos.
Dado el contexto particularizado de esta controversia, en la etapa de arbitraje no había justificación que susten-tara la conclusión del árbitro de no permitir el descubri-miento de la información obtenida por la Autoridad previo a la vista. Véase Arbitrator Gabriel N. Alexander, General Motors Umpire Decision No. F-97 (Alexander, 1950) (“The *459 re is not a scintilla of justification for the withholding of information by either party from and after the time it is discovered”). (19)
Es importante señalar que el hecho de que el árbitro permitiera un breve receso durante la vista para que la Autoridad examinara el informe pericial y pudiera contra-interrogar al perito, no satisface la norma de derecho que acabamos de esbozar. No debemos soslayar que la eviden-cia en controversia constituye un informe científico (peri-cial) que requiere mayor detenimiento para examinarlo y conocimiento especializado para entenderlo, y esto no era posible realizarlo en un corto espacio de tiempo de receso de la vista. Es meritorio mencionar que aunque nuestro ordenamiento jurídico faculta el testimonio pericial basado en datos percibidos antes de o durante el juicio o la vista, no debemos pasar por alto que en los procedimientos en que aplica dicha norma de las Reglas de Evidencia de Puerto Rico, 32 L.P.R.A. Ap. VI, hay un derecho a un des-cubrimiento de prueba previo al juicio y un deber de des-cubrimiento continuo, por lo que hay una marcada diferen-cia con la controversia de autos. Regla 23 de Procedimiento Civil, 32 L.P.R.A. Ap. V; Reglas 95 — 95b de Procedimiento Criminal, 34 L.P.R.A. Ap. II.
Como a Pagán Restituyo no se le permitió examinar el informe pericial ni le proveyeron copia de las notas o apun-tes del perito, minando así la oportunidad de que el quere-llante presentara un informe pericial en contrario para re-futar el habido en manos de la Autoridad, entendemos correcta la conclusión del Tribunal de Apelaciones de que aunque la Hermandad hubiese contratado un perito, tal “gestión resultaba fútil, pues, el perito contratado no ten-dría sobre qué documentos emitir su opinión o preparar un informe, similar al que preparó el perito de la parte Recu- *460 rrida, para refutar el mismo adecuadamente”.(20) El hecho de que la evidencia no descubierta fuera de índole pericial, contribuye con creces a las circunstancias excepcionales del caso de autos y a la justificación de necesidad por parte de la Hermandad.(21)
Ante un panorama fáctico excepcional como el presente, y en aras de salvaguardar los derechos de las partes a una adjudicación justa y equitativa, procedía facultar el descu-brimiento solicitado y aplazar la vista. Véase Fernández Quiñones, op. cit., pág. 267. Mediante dicha orden, la Her-mandad hubiese tenido la oportunidad de consultar con un perito que evaluara la evidencia en controversia, con tal de prepararse de cara a una vista de arbitraje o de evaluar si procedía continuar con el procedimiento. Fairweather’s, op. cit., pág. 176.
IV
Por los fundamentos que se hacen constar aquí, disenti-mos de la Opinión mayoritaria. Por consiguiente, confir-maríamos la decisión del Tribunal de Apelaciones, puesto que erró el árbitro al no permitir el descubrimiento de prueba solicitado, por lo que el laudo se emitió en violación del debido proceso de ley de la parte recurrida. Por haber mediado un pacto contractual en que se determina que la controversia será adjudicada por un árbitro, procedería *461 que devolvamos el caso de autos para que el árbitro prosiga según lo establecido en esta Opinión. Véase Paperworkers v. Misco, Inc., supra.

 Véase Onofre Junino, Resultados de análisis caligráficos, Apéndice, pág. 35.

 Según surge del expediente, el convenio colectivo tenía fecha de vigencia hasta el 30 de septiembre de 2007. No obstante, ambas partes acordaron extender la vigencia de dicho convenio hasta el 7 de diciembre de 2007. Apéndice, pág. 49.

 Resulta meritorio destacar que en el convenio colectivo se pactó que el laudo de arbitraje sería emitido conforme a derecho. Así también lo resaltó el árbitro. Ár-bitro Jorge Torres Plaza, Laudo de Arbitraje, Apéndice, pág. 32.

 Huelga decir que por tratarse de un procedimiento ante el Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos de Puerto Rico, no le aplican las exigencias ni disposiciones de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (L.P.A.U.), 3 L.P.R.A. sec. 2102. No obstante, ello no es motivo para que las entidades excluidas por la L.P.A.U. puedan encausar sus procedimientos adjudicativos irrestrictamente.
A pesar de la inaplicabilidad de la L.P.A.U. al Negociado de Conciliación y Ar-bitraje, éste tiene un reglamento interno que lo vincula, conocido como Reglamento para el Orden Interno de los Servicios de Arbitraje del Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos, Reglamento Núm. 6065 de 23 de diciembre de 1999. Si bien el Reglamento reconoce que en los proce-dimientos de arbitraje deberá prevalecer la justicia, la razonabilidad, la prontitud y la economía, en materia evidenciaría el Reglamento no abona nada pertinente a la controversia de autos. Por ello, la conclusión a la que llegamos aquí se fundamenta en consideraciones que superan dicho marco reglamentario.

 Apéndice, pág. 18.

 Véase Resolución del Tribunal de Apelaciones, Apéndice, pág. 120.

 Íd., págs. 120-121.

 Esta Curia ha resuelto que “ ‘[l]os procedimientos de arbitraje y los laudos emitidos en el campo laboral gozan ante los tribunales de justicia de una especial deferencia por constituir el trámite ideal para resolver disputas obrero-patronales de modo rápido, cómodo, menos costoso y técnico’ ”. J.R.T. v. Hato Rey Psychiatric Hosp., 119 D.P.R. 62, 68 (1987).

 La Constitución de Estados Unidos dispone lo propio en las Enmiendas V y XIV, L.P.R.A., Tomo 1.

 Es de notar que estas exigencias no aplican en aquellas ocasiones en que partes privadas decidan contratar a un árbitro privado para la adjudicación de sus controversias.

 El hecho de que el laudo sea emitido conforme a derecho es con relación al derecho sustantivo laboral que se utilizará en el procedimiento adjudicativo de arbitraje. C.F.S.E. v. Unión de Médicos, supra, pág. 449.

 “Así pues, en atención a esa deferencia, hemos establecido que la revisión de un laudo se circunscribirá, cuando no se ha especificado que sea conforme a derecho, ‘a la determinación de la existencia de fraude, conducta impropia, falta del debido proceso de ley, violación a la política pública, falta de jurisdicción o que el laudo no resuelve todos los asuntos en controversia’ ”. (Énfasis suplido). Depto. Educ. v. Díaz Maldonado, 183 D.P.R. 315, 325-326 (2011).

 Añade Alfred G. Feliu: “But the fact that litigation rules of procedure and evidence are not required to be followed does not compel the conclusion that they must be ignored. The wisdom and experience embodied in these rules have served and will continue to serve both to inform and order arbitration proceedings”. A.G. Feliu, Discovery in Arbitration: How Much is Enough?, 4 (Núm. 1) ADR Currents 2 (marzo 1999).
Como se puede observar, la Opinión mayoritaria omite mencionar sobre estas corrientes en materia arbitral, que si bien intentan mantener un espíritu de infor-malidad y flexibilidad en el proceso, no excluyen categóricamente una petición de descubrimiento de prueba a modo de excepción.

 A pesar de que las partes de la controversia de autos no pactaron utilizar las reglas de la American Arbitration Association (A.A.A.), acudimos a éstas por ser de gran utilidad e ilustrativas en la presente adjudicación. La A.A.A. es una organiza-ción sin fines de lucro fundada en 1926 y goza de reconocida reputación por su participación en delinear estándares en materia de arbitraje y otros medios de solu-ción alterna de disputas.

 “La obligación de proveer información ha trascendido la fase de negociar el contrato y se ha exigido, también, en la fase de administrarlo. El Tribunal Supremo federal ha respaldado la determinación de la Junta Nacional de que es una práctica ilícita de trabajo negarse a proveerle información a la unión para ayudarla a decidir si somete un agravio a tenor con los procedimientos contenidos en el convenio colectivo. De igual manera se ha sostenido que la obligación de proveer información se extiende a la preparación de un caso para presentarlo en una audiencia de arbitraje”. (Escolio omitido). D. Fernández Quiñones, El arbitraje obrero-patronal, Colombia, Ed. Forum, 2000, pág. 731.

 Los testimonios de las otras empleadas afectadas fueron estipulados por las partes. El testimonio del oficial de seguridad interna, Roberto Ramos Cruz, sólo se limitó a acreditar que tras los incidentes reportados por las empleadas afectadas, la Autoridad puso ‘Vigilancia en el estacionamiento, en la cual ... no identificaron a nadie en el área especificada donde estaban los vehículos de las empleadas, pero que un día vieron a varios empleados en el estacionamiento en horas laborables, entre los que se encontraba Daniel Pagán. [Ello ocurrió] c[e]rca de la hora de salida o ponche y que no los vió cerca de los vehículos de las empleadas”. Apéndice, págs. 28-29.

 Véase Arbitro Jorge Torres Plaza, Laudo de Arbitraje, Apéndice, pág. 15. Véase, además, Apéndice, pág. 72. Si bien es cierto que hubo más de una evidencia presentada en la vista de arbitraje, igual de cierto es que hubo sólo una prueba que *458 satisficiera la relación de responsabilidad entre el señor Pagán Restituyo y los inci-dentes con las empleadas: ésta fue el informe pericial. Id.

 Id., pág. 18. El Tribunal de Apelaciones sentenció:
“Tanto el Laudo de arbitraje emitido, como la determinación del tribunal de instancia en la que se confirma la decisión del Árbitro, expresan de forma directa el gran peso que se le adjudicó al testimonio del Sr. Jusino, el cual se basaba en su informe pericial.... La única prueba que apunta a la culpabilidad del Sr. Pagán es el informe realizado por el Sr. Jusino y su testimonio”. Sentencia del Tribunal de Ape-laciones, Apéndice, pág. 120.

 Nótese que la exigencia a descubrir el informe pericial en cuestión se limita sólo al procedimiento de arbitraje, mas no se extiende al procedimiento previo e interno de quejas y agravios.

 Sentencia del Tribunal de Apelaciones, Apéndice, pág. 120.

 Es importante hacer hincapié en el carácter pericial y científico de la evi-dencia no provista y necesaria para una adecuada defensa durante el procedimiento de arbitraje, máxime cuando se carece de otra evidencia que impute la responsabili-dad de la persona sujeta del proceso disciplinario. Esa naturaleza de la evidencia no descubierta, además del hecho de que era la única evidencia que imputaba la res-ponsabilidad de Pagán Restituyo, abona a encontrar en la controversia de autos circunstancias extraordinarias que justifiquen la aplicación de la excepción a la norma general en cuanto al descubrimiento de prueba en los procedimientos de arbitraje.
Esa determinación de especial necesidad y circunstancias extraordinarias no se puede definir mediante una norma de aplicación general, sino que le corresponde a los tribunales evaluar y ponderar cada caso dentro del contexto en que se desarrolle cada controversia.